Good morning, your honors. May it please the court, Ashley Aul for the United States. With leave, I'd like to reserve three minutes of time for rebuttal. The district court's order dismissing the indictment in this case is simply unsupportable under this court's precedent. At the time of his deportation hearings in 2004, defendant was a two-time aggravated felon. And I emphasize the defendant does not contest that fact. He does not deny that his 11378 convictions were aggravated felonies, and he does not deny that they would have thus foreclosed any application of voluntary departure at the time. But the district court nevertheless found the defendant was plausible that he would have received voluntary departure. Simply put, what is illegal is not plausible under this court's precedence. This court has repeatedly held that in Bustos Ochoa and in earlier cases. And indeed, the court rejected a much less radical standard for plausibility in Valdez-Navoa. And as the Supreme Court has held in an analogous context under Strickland, such a windfall is not the kind of legitimate prejudice that is cognizable on collateral review. And defendant's core strategy, I submit on appeal, has simply been to confuse the well-established prejudice standards that apply in 1326D cases. But as we laid out in our reply brief. I think that's a defense lawyer's job, isn't it? It is, Your Honor. And they've done an excellent job of it. And so if it's helpful to the court. I'm sure opposing counsel is pleased by the compliment. I hope so. But starting from first principles, it's well-established the defendant bears the burden. Can you just walk me through the immigration hearing? And just so I understand how this would have come. He was not offered. I'm sorry. Voluntary departure. Right. I'm saying defendant here. But in that case, he was not defendant. He was the. The alien. Alien. Right. He is a deportee, I guess. The particular immigration hearing is not in the record in this case. We laid that out in a footnote. We didn't know we had a tape of it at the time of the hearing. The way that this would play out in a typical case, Your Honor. Right. Is if a defendant. Say there's something in a notice to a. Notice to a. Pardon me. Notice indicating the notice to appear. In this particular case, that was only a controlled substance offense. 11379A. However, assuming in that case the court had said. All right. It appears that you may be eligible for voluntary departure. And I'm sorry. Just to fill in all the dots. So that offense would have. Would not have precluded him from voluntary departure. That's correct, Your Honor. Because transportation is not traffic. And if the hypothetical hearing were positive here. Had gone as it should have gone. That IJ should have offered him voluntary departure. If that were the only conviction. That's correct, Your Honor. So he's not being offered. He wasn't hypothesizing offered voluntary departure. How would it have played out? Who would have raised these additional two offenses? How would this have. I imagine the government would have, Your Honor. Or frankly, these hearings are fairly informal. As they actually play out. I'm sure Your Honor has heard tapes of them before. The IJs typically engage in a conversation with the defendant. About their criminal history. So it's possible that there would have been a colloquy with the defendant. About, well, do you have other convictions? As this court laid out in Valdez-Novoa. The factors that go into it. They usually lie, right? They usually say no. I wouldn't say that, Your Honor. Sometimes. I would say in many cases. The defendant does admit that they have other convictions. But let's say he doesn't. Would the ICE lawyer. I guess the government is represented by ICE. That's correct. Or INS. Whoever it was in the time. He would have a rap sheet? Yeah, I would assume so, Your Honor. I have not been in an ICE hearing in person. However, having listened to many of these tapes. In my experience. The government lawyers do go in with a complete understanding. Of what the alien's criminal history is. Because it is relevant. So what I'm hypothesizing is that the IJ. Starts to offer voluntary departure. And the government would say. But Your Honor. Be aware that he's got these two other priors. That's how we're hypothesizing. That's correct. The factors that go into voluntary departure. Regardless of statutory bars. Look to the amount and recency of criminal history generally. That's one of the general factors looked to. So even if it wasn't a bar to voluntary departure. Criminal history is something the IJ has to look at. To exercise their discretion. And so you're going to be talking about the alien's criminal history. But what I understood the district court to say. Was that no one presented the convictions to this IJ. So the IJ should have made it available. Well we're operating in a hypothetical universe. Your Honor. Because of course the IJ didn't offer a voluntary departure at all. So defendant never made a record justifying voluntary departure. There's no facts in the record justifying its application. There's also limited facts in the record. Justifying not applying it in this case. When this court is analyzing the plausibility of discretionary relief. The court does not limit itself to the record of what actually happened. And I laid out in the reply brief. This would be very bad for defendants if that were the case. Because they have far more factors. And ultimately they do have the burden. To prove that it would be plausible under the circumstances. So in this case to use it as an example. But there are many others like it. The defendant submitted a declaration. Saying what their circumstances were at the time. The number of children they had. What their spousal situation was. Their work history. Because those are the factors that the IJ would have considered. Had voluntary departure been offered at the time. But of course they're not in the IJ record. Because it wasn't offered to him. And so he never had the opportunity to make that record. And likewise the government never had the opportunity to rebut it. And the way this court has analyzed plausibility. In this hypothetical universe. Has not been tied to any hyper technical application of burdens. I would point the court to Gonzalez Valerio in particular. And to Gomez. In Gonzalez Valerio the court cited CFR provisions. Simply to indicate that the IJ could have looked beyond the notice to appear. In order to consider whether or not those convictions barred relief. The court didn't engage in a excruciated analysis of who had the burden under those regulations. It was certainly as a matter of could the IJ have looked beyond the notice or not. And in the deportability context it's clear the IJ cannot look beyond the notice to appear. And so as a result this court doesn't look beyond it in determining harmlessness. But in the discretionary relief context the court can. And so that's what this court also does. The court did that in Gonzalez Valerio. It did it in Gomez. It did it in Bustos Ochoa. And it should hold the same thing here. I'd like to reserve my remaining time for rebuttal. Thank you. Thank you. May it please the Court. Jonathan Schneller on behalf of APA Lee, Sergio Martinez. I'll start on the Bustos Ochoa issue. And if the Court would like, I would also like to speak to the question of Mathis and whether the defendant in this case was deportable in the first place. On the Bustos Ochoa question. If you're right on the second question, let's say Mathis changes the law. I'd like to get clear also with the question Judge Kaczynski had asked. If you're right on that one, the government says, well, there are other charges that would bar him anyway or other convictions. Is that right? If we're right on the second question, whether the drug laws are divisible, that being the second question. If we're right on the second question, then those other convictions would not have even come into play. He would not have been deportable in the first place. So the question of discretionary relief. So there are, even if the other convictions that were not charged, even if those convictions weren't taken into account, they would, under Mathis, in your view, they would not be divisible. That's right. So we believe that under Mathis those other convictions were not divisible, nor was the 11-379 conviction for which he was found deportable. So he would have never been found deportable at all. So if you were to win and Mathis changes the law, that would apply to all of the convictions involved, those charged in the notice and those not charged. That's correct, Your Honor. All of the convictions here were California controlled substance offense convictions, and they would all be divisible or not divisible under the same reasoning. And to pick up on that question, I think it's important to recognize Judge Wardlaw asked earlier whether Mathis had changed Rendon in any way, whether it affected Rendon. And I agree with Judge Wardlaw that for the most part the analysis in Mathis tracks Rendon and Almanza-Reynos, with the exception of the issue that we pointed out in our supplemental briefs, which is that Mathis articulated a standard for the level of certainty you need about state law before you find that a statute is divisible. Before Mathis, there was no standard articulated in Supreme Court or Ninth Circuit precedent. What Mathis said is that you need clarity, you need certainty that state law treats statutory alternatives as elements rather than means. And absent that certainty, you can't apply the modified categorical approach. That's a new principle that wasn't present in any of this court's precedents or in Supreme Court precedents in its dispositive year, because California law does not provide that level of certainty. I have to say, despite what the Supreme Court said, I don't find it so easy to tell what's an element and what is a means. I never did understand and still don't how you determine what's an element and what's a means. Although I agree with you that Justice Kagan's decision says that you have to be certain. We have, as you probably are aware, the Supreme Court sent back one of our pending cases to be reviewed and reconsidered in light of Mathis. I assume, however, that we probably are the first panel to have a post-Mathis case. As far as I'm aware, Your Honor, this court has not heard argument about the implications of Mathis on this particular question, which is whether California's drug laws are divisible and, more broadly, the level of certainty you need about state law before finding a statute divisible. This issue comes up in case after case after case. I don't think Mathis gives us too much more information about what is something a means and when it's something an element, although Justice Kagan thinks that's a simple, clear question. We have struggled with it, as you may be aware, from reading Rendon and the various other opinions. I don't know what the practicality is, but what would you think of our asking the Supreme Court of California to give us an answer to that question? Your Honor, that's certainly an option that this court has. I don't think it's necessary in these circumstances, because unlike, say, a diversity case, where this court absolutely has to come to some sort of conclusive decision about what state law means, in this legal framework, there's a tiebreaker built into the decision-making process, which means that this court does not have to have complete clarity to render a decision in this case. It doesn't need to come to a firm conclusion about what California state law means. It can just look at California state law, and if the state law is not clear, this court can still decide the case without clarity. It can say that it's not certain the defendant was convicted of the generic offense. So you're saying we should follow Judge Hawkins' concurrence and Ramirez-Macias? I think Judge Hawkins' concurrence, which said that this is an unclear question, I think is dispositive. You know, the reasoning of that concurrence would be dispositive under the Supreme Court's frameworks, and you don't need to look further than whether it's an unclear or clear question under California law. So I think that certification is certainly an option, and it would provide a concrete answer, but this is not a legal regime in which you need a concrete answer to decide this case. It's enough to say that the law is unclear, and therefore you don't have the certainty required to apply the modified categorical approach. Yeah, and tell us why you think the law is unclear. Well, largely for the reasons that Judge Hawkins pointed out in his concurrence. I think there are multiple California court of appeals cases which say that although the identity of a substance is alleged in indictments and also identified in jury instructions, neither one of those things is something that is required firmly. So we have cases that we've cited in our briefs saying that if you, for example, list the wrong controlled substance in an indictment, that does not affect the soundness of the conviction that results. Similarly, in the Martin case, the California court of appeals said that if a judge incorrectly instructs the jury on the identity of a controlled substance, that likewise doesn't affect the soundness of the conviction. So under Mathis, under Decant, an element is something that the state has to judge in a document and that the jury has to agree on. What these intermediate appellate decisions say is that that's not the case in California. It doesn't matter if you list the wrong controlled substance in an indictment or if the judge instructs the jury on the wrong controlled substance. So I think those cases make it at best unclear whether the identity of a controlled substance is something that must be charged and something that the jury must agree on. And because that's unclear, these are cases like Romero, like Martin, Ross, Salas that we've cited. Because they create uncertainty on that issue, there simply is not the clarity that's necessary to conclusively say the defendant was convicted of the generic offense. It could be that he was tried by a judge who, like the many other California judges, thought that the identity of the controlled substance was not essential to a conviction. And if that's the case, then we don't have the certainty we need to apply the modified statute. If we were to say that, that would affect a vast number of federal sentences and the ability of the government to remove a vast number of people for having committed these crimes. Yes, Your Honor, but it would also be consistent with the Supreme Court's repeated insistence that the modified categorical approach only applies in a narrow range of cases. And the same was true of the California burglary statute that issued in Dekamp. The same was true of the burglary statute at issue in Mathis in Iowa. That's totally consistent with what the Supreme Court has made clear, which is that the modified categorical approach is a very limited exception to the general strictures of the categorical approach. And time and time again, courts have tried to apply the modified categorical approach more liberally, and the Supreme Court has repeatedly constrained that orientation, made it clear that this is a very limited exception. So I don't think that would be an incongruous result. I think it would be very consistent with what the Supreme Court said over and over again. Would Your Honor be interested in discussing the Bustos-Ochoa question before I close? Well, you've got 38 seconds. I would just note that— Give you a minute. Thank you. On that issue, I would just note that there is no case that says that prejudice is analyzed in a vacuum, regardless of the concrete specifics of an immigration hearing. In this case, there's— Well, what the government is saying is he was not eligible for voluntary departure. He wasn't offered voluntary departure. He, in fact, is not eligible. Now, you've got an argument that maybe he was, but that's the other argument. And you say, so we don't have to know what happened at the hearing. The fact is this was not a situation where he went through a deportation hearing and he failed to get all of the process which was due him because he was not due any process in the sense of being offered voluntary departure. What's wrong with that argument? I would respectfully disagree with that. I think he was entitled to due process based on the record in the immigration hearing. The due process is not some sort of abstraction based on things that are out there. But it's not an abstraction. It's who he is and what record he has. And if he stands there not eligible for voluntary departure and he is not offered voluntary departure, what has he been denied? I think he's eligible for voluntary departure until the government meets its burden of proof to show that he's not. And if it fails to do so, I think due process requires that he be granted voluntary departure. It has to be proven in that hearing? Yes, I think the government— Why? Because the due process was about that hearing being a fair one. The question is the fairness of that hearing and whether he was prejudiced by the unfairness in that hearing. Where does it say that his eligibility for relief has to be proven or disproven in that hearing? If, in fact, he is offered everything to which he is entitled given what his record is, I think there's—I take your point, Your Honor, but I think the point is inconsistent with the cases involving deportability where this court has said that you can only be deportable or that you're prejudiced unless you're deportable for the reasons stated in your notice to appear. It's not an abstract inquiry. These are the immigration cases? Yes, like the chowdery case that we cite in our brief. The question is not whether you're deportable in the abstract. The question is whether you're deportable on the record in your case. That's when the matter is litigated. When the matter is litigated in the hearing, then they have to prove up. But I'm not sure why—anyway. I would just say that I think those cases clearly stand for the proposition that it's not about your abstract legal entitlement to relief, the due process inquiry. It's about the concrete specifics of your case. One second. Well, could you just tell us what specific language you're relying on for the proposition that it has to be absolutely clear? I think there are two portions in Part 2C of the DeCamp opinion that I direct the Court to. DeCamp or Mathis? I'm sorry, the Mathis opinion. Thank you, Your Honor. The first is the very last paragraph of Part 2C. The first sentence says that if state law fails to provide clear answers, federal judges should then turn to charging documents and other shepherd documents. And then the last two sentences of the same paragraph say that such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy Taylor's demand for certainty. And then if you look to the next sentence, they talk about the concept of indeterminacy. I think taken together, the reference to clear answers, to certainty, to speaking plainly, and to indeterminacy make clear that when you have indeterminacy, you cannot apply the modified capital order. Can you give me those pages again? I'm sorry? Can you give me those pages again? Sure. It's pages in the Supreme Court Reporter. It's pages 2256 to 57. In the U.S. report? I don't think that's... Or the slip of opinion? I'm sorry, Your Honor? In the slip of opinion? I don't have the slip of opinion in front of me, but if you look to Part 2C of the opinion, it is the very... I'm sure Judge Kuzinski is very familiar with that paragraph you just mentioned, since his name appears in it. I couldn't have overlooked that. Well, it happens so often, I can't... But not with approval so often. Okay. Thank you very much. You're going to spell the name right? Thank you, Your Honor. Do you relate on 2C? Yes. It's paragraph 2C. The whole paragraph, particularly the first and last couple sentences, the first sentence and the last couple sentences. Okay. Thank you very much. Thank you, Your Honors. Very briefly, defendant has not challenged... Let me ask you first, how do you feel about asking the California Supreme Court to tell us just what California law is since the Court of Appeals, various courts of appeals have not made it clear? I agree with my colleague that that's not necessary. I differ with why it's not necessary. First, as we laid out in our supplemental brief, this court has already decided that California law treats drug type as an element, and it has done so based on analysis of California law. And I would, in particular, direct the court to Vega-Ortiz, where it noted a variety of sources so indicating, including California model jury instructions that courts in California have adopted. I did not cite in my supplemental brief, but I would also direct the court to footnote 21 of Almanza-Arenas. In that case, too, the court analyzed the nature of court's deference to model jury instructions in California, and it was on the basis of exactly that analysis that the court found what the elements of the vehicle code provision at issue in Almanza-Arenas were. That's exactly the same framework underlying this court's analysis of the health and safety code and its binding. But even putting that aside... Did you say that you had referred to that case in a supplemental letter? Almanza-Arenas is cited. Footnote 21 of that, that's the en banc opinion regarding divisibility. Footnote 21 of that opinion discusses California jury instructions and how courts in California adhere to those instructions, which amplifies a point that we had already made specifically about the health and safety code instructions. Even if California law did not provide clear answers, and more importantly, I think, even if this court had not already decided what the elements were, there is a tiebreaker, as my colleague mentioned, but the tiebreaker is the documents in a particular case. That's what the court has now said twice from the Supreme Court in footnote 2 of Descomp and now in Mathis. The documents in this particular case speak very clearly and indicate that the defendant was charged with possession of methamphetamine. Do you give any significance to the fact that... You know, we've had cases like this fairly regularly, as you know. The fact that the Supreme Court returned a case for reconsideration after whatever it is, after Mathis. I don't, Your Honor. I mean, certainly it does fall within... If they thought it didn't change anything. I do think it didn't change anything. But I don't know that the Supreme Court is familiar with this Court's precedence regarding what the elements of the... They better be familiar with it. They keep reverting us. With respect to... In this particular case, they didn't, Your Honor. And in Mathis, they did affirm the Rendon approach and the approach of the Fourth Circuit. And moreover, I don't know that the Supreme Court is familiar with this Court's findings regarding what the elements of the California Health and Safety Code provisions are. Two small notes. The defendant has not challenged the divisibility of the 11378 convictions that prohibited voluntary departure. There's a reason for that. They're analyzed differently because it's about the eligibility for discretionary relief. And so they would be analyzed under the law at the time, under Vindal-Mendoza. So it's no accident that they haven't been challenged. If the Court has no further questions, I would submit. Thank you very much. Thank you. The case just argued will be submitted.
judges: Reinhardt, Kozinski, Wardlaw